# UNITED STATES DISTRICT COURT

for the

District of Alaska

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. 3:17-mj-00357-DMS |
| | ) |
| Grant Aviation, Inc. | ) |
| 4451 Aircraft Drive, Anchorage, Alaska 99502 | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Alaska _____
*(identify the person or describe the property to be searched and give its location)*:
Grant Aviation, Inc., 4451 Aircraft Drive, Anchorage, Alaska 99502. See also Attachment A, attached hereto and incorporated herein.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B, attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    Sept. 25 2017
                                                             *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
any United States Magistrate Judge _____ .
                *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30)*.
                            ☐ until, the facts justifying, the later specific date of _____

                                             /S/ DEBORAH M. SMITH
                                       CHIEF U.S. MAGISTRATE JUDGE
Date and time issued:   1:20pm   9/11/17             SIGNATURE REDACTED

City and state:    Anchorage, Alaska _____        Deborah M. Smith, Magistrate Judge
                                                       *Printed name and title*

**GOVERNMENT EXHIBIT**
1

| Return | | |
|---|---|---|
| Case No.:<br>3:17-mj-00357-DMS | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

*Property to be searched*

The property to be searched is **Grant Aviation, Inc., 4451 Aircraft Drive, Anchorage, Alaska, 99502,** further described as a grey, two-story building located on the west side of Lake Hood and northeast of Ted Stevens Anchorage International Airport. The **Premises** can be reached by traveling Northbound on Aircraft Drive and turning right (East) prior to the intersection of Aircraft Drive and Lake Hood Taxiway. Attached to the building and included in the **Premises** is an aircraft hangar. On the metal, exterior door of the aircraft hangar is a white sign with "Grant Aviation" written in red and the company's logo. Additionally, there is a grey garage door next to the hangar with the same white Grant Aviation sign as is affixed to the hangar door. This garage is also included in the **Premises.** A mesh, metal structure on the façade of the building says "LAKE AIRE COMPLEX 4451 AIRCRAFT DRIVE" and bears the names of Grant Aviation, Servant Air, and State of Alaska Lake Hood Operations. Grant Aviation, Inc's public entrance is on the southeast side of the building and bears a red Grant Aviation logo.



3:17-mj-00357-DMS

SEP 11 2017

<u>**ATTACHMENT B**</u>

*Property to be seized*

For the period from January 2011 to the present, the following documents, records, photographs, and personal property, in any form or format, constituting evidence of violations of of 18 U.S.C. § 1001 and 18 U.S.C. § 1343:

**A.**     <u>**Documents, Records, Photographs, Personal Property**</u>

<u>Ownership and control records</u>

1.     Records that reflect any persons or organizations who have direct or indirect ownership or control interests in, or who have acted as a director, officer, agent, or management employee of Grant Aviation, Inc..

2.     Records tending to establish ownership and/or control of the **Premises,** including utility records, telephone records, mail, canceled envelopes, rental or lease records, title records, deeds, mortgage records, property tax records, insurance records, business cards, personal identification documents.

3.     Records tending to establish the identity of persons in control of computers and other digital storage media.

<u>T-100 data and related records</u>

4.     T-100 reports and all supporting records, including records related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

5.     Training materials and policies related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

SEP 1 1 2017

<u>Flight records and related records</u>

6.      Flight records, including (i) flight schedules and all supporting records, including records related to the preparation of flight schedules or the submission of flight schedules to the Official Airline Guide; and (ii) flight plans, manifests, pilot logs, tickets, records reflecting crews, passengers, or freight onboard, records related to the preparation of such documents.

7.      Training materials and policies related to the preparation of flight records.

<u>Passenger transaction records</u>

8.      Passenger transactions records, including passenger correspondence, internal correspondence about passengers, passenger contact information, reservation information, passenger tickets, fares, cancellations, refunds, invoicing and payment records, and other records indicating payment or request for payment for flights operated by Grant Aviation, Inc.

<u>Aircraft records</u>

9.      Records related to Grant Aviation, Inc. aircraft, including purchase or lease agreements, aircraft lists, aircraft photographs, aircraft tail numbers.

<u>Records and correspondence sent or received</u>

10.     Records and correspondence sent to or received from the Department of Transportation or the Postal Service.

11.     Records and correspondence sent to or received from Grant Aviation of Alaska, LLC, or Eric Young.

12.     Internal and external communications related to the bypass mail program, including the handling or transportation of mail, passengers, or freight.

SEP 1 1 2017

Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 5 of 53

Financial Records

13.     Tax records, bookkeeping records, and financial statement records, including journals, ledgers, registers, trial balances, income statements, balance sheets, retained earnings statements, cash flow statements.

14.     Financial account records, including bank statements, credit account statements, investment account statements, and insurance account statements; records reflecting dates and amounts of deposits, withdrawals, and interest; passbooks, deposit/withdrawal tickets; records reflecting the identify of checks deposited, check registers, cancelled/processed checks; records of other financial transactions.

15.     Payroll records including W-2's, 1099s, employee rosters, payroll checks, employee contracts, salary information, timesheets, and training records, as well as all telephone lists, address lists, and contact information for Grant Aviation, Inc. employees.

**B.     Electronic Records**

16.     Computers or storage media used as a means to commit the violations described above. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, tablets, server computers, and network hardware. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

17.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, **"Computer"**):

SEP 1 1 2017

a. records and information falling within the categories set forth above;

b. records and information relating to any e-mail account with the domain "@flygrant.com";

c. evidence of who used, owned, or controlled the **Computer** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence of the attachment to the **Computer** of other storage devices or similar containers for electronic evidence;

f. evidence of the times the **Computer** was used;

g. passwords, encryption keys, and other access devices that may be necessary to access the **Computer**;

h. documentation and manuals that may be necessary to access the **Computer** or to conduct a forensic examination of the **Computer**;

i. records of or information about Internet Protocol addresses used by the **Computer**;

j. records of or information about the **Computer's** Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or

Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 7 of 53

"favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The agents conducting the search are directed to image the hard drives of subject computers on-site, if at all possible to minimize disruption to the business. If it's necessary to seize a computer, agents are directed to list the computers seized and removed and explain why it was not possible to image them on site. This information should be provided in the return of the search warrant.  DS 9/11/17

Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 8 of 53

# UNITED STATES DISTRICT COURT

for the

District of Alaska

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Grant Aviation, Inc.<br>4451 Aircraft Drive, Anchorage, Alaska 99502 | )<br>)<br>)<br>)<br>)<br>)    Case No.   3:17-mj-00357-DMS |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Alaska _____
*(identify the person or describe the property to be searched and give its location)*:
Grant Aviation, Inc., 4451 Aircraft Drive, Anchorage, Alaska 99502. See also Attachment A, attached hereto and incorporated herein.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B, attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    *Sept. 25, 2017*
                                                                  *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
any United States Magistrate Judge          .
    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30)*.
                                ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   *1:20pm   9/11/17*        /S/ DEBORAH M. SMITH
                                         CHIEF U.S. MAGISTRATE JUDGE
                                         SIGNATURE REDACTED
                                       *Judge's signature*

City and state:    Anchorage, Alaska                  Deborah M. Smith, Magistrate Judge
                                                     *Printed name and title*

| Return |
|---|

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 3:17-mj-00357-DMS | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is **Grant Aviation, Inc., 4451 Aircraft Drive, Anchorage, Alaska, 99502,** further described as a grey, two-story building located on the west side of Lake Hood and northeast of Ted Stevens Anchorage International Airport. The **Premises** can be reached by traveling Northbound on Aircraft Drive and turning right (East) prior to the intersection of Aircraft Drive and Lake Hood Taxiway. Attached to the building and included in the **Premises** is an aircraft hangar. On the metal, exterior door of the aircraft hangar is a white sign with "Grant Aviation" written in red and the company's logo. Additionally, there is a grey garage door next to the hangar with the same white Grant Aviation sign as is affixed to the hangar door. This garage is also included in the **Premises.** A mesh, metal structure on the façade of the building says "LAKE AIRE COMPLEX 4451 AIRCRAFT DRIVE" and bears the names of Grant Aviation, Servant Air, and State of Alaska Lake Hood Operations. Grant Aviation, Inc's public entrance is on the southeast side of the building and bears a red Grant Aviation logo.



3:17-mj-00357-DMS

SEP 11 2017

## ATTACHMENT B

*Property to be seized*

For the period from January 2011 to the present, the following documents, records, photographs, and personal property, in any form or format, constituting evidence of violations of of 18 U.S.C. § 1001 and 18 U.S.C. § 1343:

**A.**  **Documents, Records, Photographs, Personal Property**

Ownership and control records

1.  Records that reflect any persons or organizations who have direct or indirect ownership or control interests in, or who have acted as a director, officer, agent, or management employee of Grant Aviation, Inc..

2.  Records tending to establish ownership and/or control of the **Premises,** including utility records, telephone records, mail, canceled envelopes, rental or lease records, title records, deeds, mortgage records, property tax records, insurance records, business cards, personal identification documents.

3.  Records tending to establish the identity of persons in control of computers and other digital storage media.

T-100 data and related records

4.  T-100 reports and all supporting records, including records related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

5.  Training materials and policies related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

SEP 11 2017

<u>Flight records and related records</u>

6. Flight records, including (i) flight schedules and all supporting records, including records related to the preparation of flight schedules or the submission of flight schedules to the Official Airline Guide; and (ii) flight plans, manifests, pilot logs, tickets, records reflecting crews, passengers, or freight onboard, records related to the preparation of such documents.

7. Training materials and policies related to the preparation of flight records.

<u>Passenger transaction records</u>

8. Passenger transactions records, including passenger correspondence, internal correspondence about passengers, passenger contact information, reservation information, passenger tickets, fares, cancellations, refunds, invoicing and payment records, and other records indicating payment or request for payment for flights operated by Grant Aviation, Inc.

<u>Aircraft records</u>

9. Records related to Grant Aviation, Inc. aircraft, including purchase or lease agreements, aircraft lists, aircraft photographs, aircraft tail numbers.

<u>Records and correspondence sent or received</u>

10. Records and correspondence sent to or received from the Department of Transportation or the Postal Service.

11. Records and correspondence sent to or received from Grant Aviation of Alaska, LLC, or Eric Young.

12. Internal and external communications related to the bypass mail program, including the handling or transportation of mail, passengers, or freight.



3:17-mj-00357-DMS                      2                      SEP 1 1 2017

Financial Records

13.    Tax records, bookkeeping records, and financial statement records, including journals, ledgers, registers, trial balances, income statements, balance sheets, retained earnings statements, cash flow statements.

14.    Financial account records, including bank statements, credit account statements, investment account statements, and insurance account statements; records reflecting dates and amounts of deposits, withdrawals, and interest; passbooks, deposit/withdrawal tickets; records reflecting the identify of checks deposited, check registers, cancelled/processed checks; records of other financial transactions.

15.    Payroll records including W-2's, 1099s, employee rosters, payroll checks, employee contracts, salary information, timesheets, and training records, as well as all telephone lists, address lists, and contact information for Grant Aviation, Inc. employees.

**B.    Electronic Records**

16.    Computers or storage media used as a means to commit the violations described above. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, tablets, server computers, and network hardware. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

17.    For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, **"Computer"**):

SEP 1 1 2017

a. records and information falling within the categories set forth above;

b. records and information relating to any e-mail account with the domain "@flygrant.com";

c. evidence of who used, owned, or controlled the **Computer** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence of the attachment to the **Computer** of other storage devices or similar containers for electronic evidence;

f. evidence of the times the **Computer** was used;

g. passwords, encryption keys, and other access devices that may be necessary to access the **Computer**;

h. documentation and manuals that may be necessary to access the **Computer** or to conduct a forensic examination of the **Computer**;

i. records of or information about Internet Protocol addresses used by the **Computer**;

j. records of or information about the **Computer's** Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or

Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 15 of 53

"favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The agents conducting the search are directed to image the hard drives of subject computers on-site, if at all possible to minimize disruption to the business. If it is necessary to seize a computer, agents are directed to list the computers seized and removed and explain why it was not possible to image them on site. This information should be provided in the return of the search warrant. DS 9/11/17



# UNITED STATES DISTRICT COURT

for the

District of Alaska

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Grant Aviation, Inc.<br>4451 Aircraft Drive, Anchorage, Alaska 99502 | )<br>)<br>)<br>)<br>)<br>)    Case No. 3:17-mj-00357-DMS |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein.

located in the _____ District of _____ **ALASKA** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1001 | Statements or entries generally |
| 18 U.S.C. 1343 | Fraud by wire, radio, or television |

The application is based on these facts:

See attached affidavit of U.S. Department of Transportation, Office of Inspector General, Special Agent Colby Britton.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**Signature Redacted**

*Applicant's signature*

Colby Britton, Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/11/17

/S/ DEBORAH M. SMITH
CHIEF U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED

*Judge's signature*

City and state: Anchorage, Alaska

Deborah M. Smith, Magistrate Judge

*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is **Grant Aviation, Inc., 4451 Aircraft Drive, Anchorage, Alaska, 99502,** further described as a grey, two-story building located on the west side of Lake Hood and northeast of Ted Stevens Anchorage International Airport. The **Premises** can be reached by traveling Northbound on Aircraft Drive and turning right (East) prior to the intersection of Aircraft Drive and Lake Hood Taxiway. Attached to the building and included in the **Premises** is an aircraft hangar. On the metal, exterior door of the aircraft hangar is a white sign with "Grant Aviation" written in red and the company's logo. Additionally, there is a grey garage door next to the hangar with the same white Grant Aviation sign as is affixed to the hangar door. This garage is also included in the **Premises.** A mesh, metal structure on the façade of the building says "LAKE AIRE COMPLEX 4451 AIRCRAFT DRIVE" and bears the names of Grant Aviation, Servant Air, and State of Alaska Lake Hood Operations. Grant Aviation, Inc's public entrance is on the southeast side of the building and bears a red Grant Aviation logo.



3:17-mj-00357-DMS

SEP 1 1 2017

## **ATTACHMENT B**

*Property to be seized*

For the period from January 2011 to the present, the following documents, records, photographs, and personal property, in any form or format, constituting evidence of violations of of 18 U.S.C. § 1001 and 18 U.S.C. § 1343:

## **A. Documents, Records, Photographs, Personal Property**

### Ownership and control records

1. Records that reflect any persons or organizations who have direct or indirect ownership or control interests in, or who have acted as a director, officer, agent, or management employee of Grant Aviation, Inc..

2. Records tending to establish ownership and/or control of the **Premises,** including utility records, telephone records, mail, canceled envelopes, rental or lease records, title records, deeds, mortgage records, property tax records, insurance records, business cards, personal identification documents.

3. Records tending to establish the identity of persons in control of computers and other digital storage media.

### T-100 data and related records

4. T-100 reports and all supporting records, including records related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

5. Training materials and policies related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

SEP 1 1 2017

### Flight records and related records

6.      Flight records, including (i) flight schedules and all supporting records, including records related to the preparation of flight schedules or the submission of flight schedules to the Official Airline Guide; and (ii) flight plans, manifests, pilot logs, tickets, records reflecting crews, passengers, or freight onboard, records related to the preparation of such documents.

7.      Training materials and policies related to the preparation of flight records.

### Passenger transaction records

8.      Passenger transactions records, including passenger correspondence, internal correspondence about passengers, passenger contact information, reservation information, passenger tickets, fares, cancellations, refunds, invoicing and payment records, and other records indicating payment or request for payment for flights operated by Grant Aviation, Inc.

### Aircraft records

9.      Records related to Grant Aviation, Inc. aircraft, including purchase or lease agreements, aircraft lists, aircraft photographs, aircraft tail numbers.

### Records and correspondence sent or received

10.     Records and correspondence sent to or received from the Department of Transportation or the Postal Service.

11.     Records and correspondence sent to or received from Grant Aviation of Alaska, LLC, or Eric Young.

12.     Internal and external communications related to the bypass mail program, including the handling or transportation of mail, passengers, or freight.



SEP 1 1 2017

Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 20 of 53

Financial Records

13.     Tax records, bookkeeping records, and financial statement records, including journals, ledgers, registers, trial balances, income statements, balance sheets, retained earnings statements, cash flow statements.

14.     Financial account records, including bank statements, credit account statements, investment account statements, and insurance account statements; records reflecting dates and amounts of deposits, withdrawals, and interest; passbooks, deposit/withdrawal tickets; records reflecting the identify of checks deposited, check registers, cancelled/processed checks; records of other financial transactions.

15.     Payroll records including W-2's, 1099s, employee rosters, payroll checks, employee contracts, salary information, timesheets, and training records, as well as all telephone lists, address lists, and contact information for Grant Aviation, Inc. employees.

**B.     Electronic Records**

16.     Computers or storage media used as a means to commit the violations described above. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, tablets, server computers, and network hardware. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

17.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, **"Computer"**):

3:17-mj-00357-DMS                           3

SEP 1 1 2017

a.  records and information falling within the categories set forth above;

b.  records and information relating to any e-mail account with the domain "@flygrant.com";

c.  evidence of who used, owned, or controlled the **Computer** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence of the attachment to the **Computer** of other storage devices or similar containers for electronic evidence;

f.  evidence of the times the **Computer** was used;

g.  passwords, encryption keys, and other access devices that may be necessary to access the **Computer**;

h.  documentation and manuals that may be necessary to access the **Computer** or to conduct a forensic examination of the **Computer**;

i.  records of or information about Internet Protocol addresses used by the **Computer**;

j.  records of or information about the **Computer's** Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or



SEP 1 1 2017

Case 3:17-mj-00384-DMS Document 1-3 Filed 09/12/17 Page 22 of 53

"favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).



SEP 1 1 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE SEARCH OF:
**GRANT AVIATION, INC.,**
**4451 AIRCRAFT DRIVE,**
**ANCHORAGE, ALASKA 99502**

Case No.: 3:17-mj-00357-DMS

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, **Colby Britton,** being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for a warrant to search the premises known as Grant Aviation, Inc.,
4451 Aircraft Drive, Anchorage, Alaska 99502 (hereinafter, **"Premises"**), further described in
**Attachment A,** for the items described in **Attachment B.**

2.      I have been a special agent with the U.S. Department of Transportation, Office of
Inspector General, since September 2009. Upon becoming a special agent, I attended the
Criminal Investigator Training Program at the Federal Law Enforcement Training Center in
Glynco, Georgia. Since graduating from that program, I have been based in Seattle, Washington,
where I conduct criminal and civil investigations related to the programs and operations of the
Department of Transportation. As a special agent, I am a federal law enforcement officer
authorized to execute warrants and I have participated in the execution of numerous search
warrants.

SEP 1 1 2017

3:17-mj-00357-DMS

3.     This affidavit is intended to show only that there is sufficient probable cause for a search warrant and does not set forth all of my knowledge about this matter.

4.     The facts in this affidavit are based on my personal knowledge and information obtained from other individuals, including the U.S. Postal Service, Office of Inspector General.

## APPLICABLE STATUTES

5.     18 U.S.C. § 1001 makes it a crime for a person, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, except as otherwise provided in this section, to knowingly and willfully (1) falsify, conceal, or cover up by any trick, scheme, or device a material fact; (2) make any materially false, fictitious, or fraudulent statement or representation; or (3) make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

6.     18 U.S.C. § 1343 makes it a crime for a person, with the intent to defraud, to devise a scheme to defraud, or to obtain money or property by false pretenses, representations, or promises, and to use the interstate wires to execute a part of that scheme.

## PARTIES

7.     The U.S. Department of Transportation ("Department of Transportation") is a department of the U.S. government.

8.     The Office of Airline Information is an office within the Department of Transportation that collects transportation statistics on civil aeronautics.

9.     The U.S. Postal Service ("Postal Service") is an independent agency of the U.S. government.

3:17-mj-00357-DMS

SEP 11 2017

2

10.     Grant Aviation, Inc., is an air carrier based in Anchorage, Alaska. It serves communities throughout the Yukon-Kuskokwim Delta, the Aleutians, and Bristol Bay. It offers scheduled flights, charter flights, and cargo services. The company is 25 percent owned by Mark Richardson, who serves as chief operating officer; 25 percent owned by Bruce McGlasson, who services as president and chief executive officer; and 50 percent owned by Grant Aviation of Alaska, LLC. Grant Aviation of Alaska is 100 percent owned by Eric Young, who serves as the chair of the board of directors for Grant Aviation, Inc. Young also serves as the president, chief executive officer, and co-owner of Reeves Young, a commercial contractor located in Sugar Hill, Georgia.

## LEGAL BACKGROUND: THE INTRA-ALASKA BYPASS MAIL SYSTEM

11.     Under the Intra-Alaska Bypass Mail System, the Postal Service pays eligible air carriers to transport mail in Alaska that "bypasses" the Postal Service entirely. The system is designed to: (A) provide the most affordable means of delivering food and everyday necessities to rural and isolated communities in Alaska; (B) establish a system whereby the Postal Service can meet its obligations to deliver mail to every house and business in the United States; (C) support affordable and reliable passenger service in Alaska; and (D) support affordable and reliable non-mail freight service in Alaska. 2002 Supplemental Appropriations Act for Further Recovery from and Response to Terrorist Attacks on the United States, Pub. L. No. 107-206 § 3002(b)(9), 116 Stat. 820 (2002).

12.     The rules governing the bypass mail system are found under 39 U.S.C. § 5402. Under those rules, bypass carriers are classified as mainline or bush. Mainline carriers have a larger capacity (over 7,500 pounds). 39 U.S.C. § 5402(a)(13). Bush carriers have a smaller capacity (up to 7,500 pounds). 39 U.S.C. § 5402(a)(4). Mainline carriers typically transport

3:17-mj-00357-DMS

bypass mail from Anchorage or Fairbanks to hub airports. Bush carriers typically transport bypass mail from hubs to bush sites.

13.     The Postal Service is required to equitably distribute 75% of the bypass mail on a city pair route to eligible bush carriers providing scheduled passenger service on that route. 39 U.S.C. §§ 5402(h)(1), (7).

14.     "Scheduled service" means flight schedules are announced in advance in the Official Airline Guide, among other requirements. 39 U.S.C. § 5402(a)(18). The Official Airline Guide is a private company that provides digital information and applications to airlines, airports, government agencies, and travel-related service companies. According to its website (www.oag.com), the Official Airline Guide has the world's largest network of air travel data, including the definitive schedules database of more than 900 airlines and over 4,000 airports, and the most extensive flight status information database in the market. Its airline schedules database holds future and historical flight details for airlines and airports.

To qualify for bypass mail on a city pair route, a bush carrier must provide

20 percent or more of the scheduled passenger service on the route for the 12 months preceding the date it seeks tender of bypass mail on the route. 39 U.S.C. § 5402(h)(1)(B). The 12-month period is based on calendar months. To remain eligible, a bush carrier must continue to provide at least 20 percent of the scheduled passenger service on the city pair route. 39 U.S.C. § 5402(h)(2)(A). This calculation is also based on a 12-calendar-month period. (Additional qualifying requirements apply under 39 U.S.C. §§ 5402(g), (h).)

15.     The Postal Service calculates a bush carrier's percent of passenger service using data collected by the Department of Transportation. 39 U.S.C. § 5402(h)(5)(A). The calculation

is based only on passenger service on regularly scheduled flights. 39 U.S.C. § 5402(h)(5)(B).

Passenger service on non-scheduled flights is not included in the calculation. *Id.*

16. The Department of Transportation requires bush carriers to submit monthly

reports. 39 U.S.C. § 5402(k)(2). Those reports are commonly called T-100 reports and they

include passenger counts. Since 2010, the Department of Transportation has required air carriers

to submit T-100 reports via the internet. 14 C.F.R. § 217.3(e). Air carriers must retain

documentation supporting their T-100 reports for seven years. 39 U.S.C. § 5402(k)(3).

17. The Department of Transportation also requires an official of the reporting carrier

to electronically submit a signed certification that the carrier's T-100 report is true, correct, and

complete. 14 C.F.R. § 217.7.

## PROBABLE CAUSE

### Allegation

18. In January 2017, representatives from an air carrier in Alaska alleged to the Postal

Service, Office of Inspector General, and the Department of Transportation, Office of Inspector

General, that Grant Aviation, Inc. regularly misclassified non-scheduled flights as scheduled

flights in T-100 reports submitted to the Office of Airline Information. This caused the

passengers on those non-scheduled flights to be misclassified as passengers on scheduled flights.

By inflating its scheduled passenger service data, Grant Aviation, Inc. qualified for bypass mail

tender and payments from the Postal Service for multiple bypass mail markets (or city pair

routes). One of those bypass mail markets was from Bethel to Toksook Bay. It was alleged that

Grant Aviation, Inc. received undeserved bypass mail tender for that market based on 2015

inflated scheduled passenger service data.

SEP 1 1 2017

**Grant Aviation, Inc. received bypass mail for the Bethel to Toksook Bay market**

19.     Postal Service reports show that Grant Aviation, Inc. became eligible for bypass mail for the Bethel to Toksook Bay market on or about October 2, 2015. According to the Office of Airline Information, the Postal Service would have based its decision on Grant Aviation, Inc.'s T-100 data for the 12-month period from July 2014 through June 2015.

20.     Records from the Office of Airline Information show that Grant Aviation, Inc. uploaded its T-100 data for the 12-month period from July 2014 through June 2015 to the Office of Airline Information's eSubmit website (https://esubmit.rita.dot.gov) on multiple occasions between July 2014 and June 2015.

21.     On multiple occasions between December 2014 and August 2015, former Grant Aviation, Inc. Chief Financial Officer Craig Connell certified to the accuracy of Grant Aviation, Inc.'s T-100 reports on DOT Form 298C Certifications. These certifications applied to Grant Aviation, Inc's T-100 reports for the period from July 2014 to June 2015. The certifications stated, "I certify that this RITA Form 298-C report and the corresponding monthly T-100 Traffic reports, for Grant Aviation, Inc., for reporting year and quarter [i.e. (2015-06)], have been prepared by me or under my supervision. I certify that I have carefully examined the reports and to the best of my knowledge and belief, have found them to be complete and accurate for the period stated." On each of the forms Connell provided an electronic signature and the email address cconnell@flygrant.com.

22.     On or about October 1, 2015, the Office of Airline Information uploaded Grant Aviation, Inc.'s T-100 data for the 12-month period from July 2014 through June 2015 to a Postal Service website (http://sakdot.usps.gov) known as the Surface-Air Management System – Alaska ("SAMS-AK"). Before doing so, the Office of Airline Information ran that data through

what it calls the "USPS Release" program. That program applies the Inter-Village Market Conversion to Alaska air carriers' T-100 data. The Inter-Village Market Conversion allows Alaska air carriers to select passenger traffic between Alaskan villages to count toward mail markets for larger mail hubs. I have reviewed the Office of Airline Information's Inter-Village Market Conversion data for Grant Aviation, Inc. and determined that all of Grant Aviation, Inc.'s flights with a destination of Toksook Bay contribute to the Bethel to Toksook Bay mail market.

23. On October 1, 2015, Grant Aviation, Inc. President Bruce McGlasson sent an email to postal employee Joe McDonald regarding the company's T-100 data from the email address bmcglasson@flygrant.com. McGlasson wrote, "It is pretty important to us this month. If all data is included we would be back into the OOK bypass market." OOK is the airport code for Toksook Bay Airport.

24. The Official Airline Guide shows Grant Aviation, Inc. flight schedules from four locations (Bethel, Nightmute, Tununak, and Newtok) to Toksook Bay during the 12-calendar-month period from July 2014 through June 2015. Any other Grant Aviation, Inc. flights to Toksook Bay that originated from somewhere else during that period would not have counted as scheduled flights for purposes of the bypass mail program.

25. Grant Aviation, Inc.'s T-100 data for the 12-calendar-month period from July 2014 through June 2015 shows numerous non-scheduled flights to Toksook Bay that were misclassified as scheduled flights. Those flights originated in the following locations: Dillingham, South Nunek, Hooper Bay, Kongignanak, Kasigluk, Chefornak, Kwigillingok, Quinhagak, Napakiak, Atmautlauk, Kipnuk, and Togiak. The Official Airline Guide contained no flight schedules between those locations and Toksook Bay during the period reviewed. Thus, Grant Aviation, Inc. should have reported those flights as non-scheduled in its T-100 reports

3:17-mj-00357-DMS

("Scheduled service" means flight schedules are announced in advance in the Official Airline Guide, among other requirement, *supra* ¶ 14.) The number of passengers inappropriately counted toward scheduled passenger traffic from those flights totaled about 106.

26.     Using Grant Aviation, Inc's inflated scheduled passenger traffic data for the Bethel to Toksook Bay market, Grant Aviation, Inc. transported 20.86 percent of the total passengers on scheduled flights in that market during the 12-calendar-month period from July 2014 through June 2015. By transporting over 20 percent of the total passenger traffic in the Bethel to Toksook Bay market, Grant Aviation, Inc. became eligible for equitable tender of 75 percent of the bypass mail in that market starting on or about October 2, 2015; indeed, the Postal Service gave Grant Aviation, Inc. 25 percent of the bypass mail for that market (two other carriers also received 25 percent each for a total of 75 percent of the bypass mail for that market.)

27.     Without the inflated scheduled passenger traffic data of 106 passengers, Grant Aviation, Inc. transported 19.32 percent of the total passengers on scheduled flights in the Bethel to Toksook Bay bypass mail market. Grant Aviation, Inc. would therefore not have received equitable tender of 75 percent of the bypass mail in October 2015. The other two eligible bush passenger carriers in that market would have then split the bypass mail between themselves, rather than splitting it three ways.

28.     For the month of October 2015, for the Bethel to Toksook Bay market, Grant Aviation, Inc.'s inflated scheduled passenger traffic data resulted in the company receiving approximately $19,302.20 from the Postal Service to which it was not entitled.



**Grant Aviation, Inc. continued to receive bypass mail for the Bethel to Toksook Bay market**

29.     To remain eligible for equitable tender of 75 percent of the bypass mail in the Bethel to Toksook Bay market, Grant Aviation, Inc. had to continue to transport at least 20 percent of the passengers on scheduled flights in that market. This calculation is based on 12-calendar-month periods.

30.     Investigation compared the T-100 data submitted by Grant Aviation, Inc. to the Office of Airline Information for 23 calendar-months from July 2015 through May 2017, to the Official Airline Guide for Grant Aviation, Inc.'s scheduled flights to Toksook Bay for the same period. Investigation found that Grant Aviation, Inc. continued to misclassify flights that were not included in the Official Airline Guide as scheduled flights in its T-100 reports. This inflated Grant Aviation, Inc.'s scheduled passenger traffic by at least 1,000 passengers during the period reviewed.

31.     Based on the information available, it is unclear when or if Grant Aviation, Inc. would have qualified for bypass mail for the Bethel to Toksook Bay market in the months following October 2015. The number of inflated passengers noted above does not take into account that Grant Aviation, Inc. may also have inflated its passenger traffic by falsely submitting non-scheduled flights from Bethel, Nightmute, Tununak, or Newtok to Toksook Bay as scheduled service. For instance, from July 2014 through June 2015, Grant Aviation, Inc. did not submit a single non-scheduled flight destined for Toksook Bay in its T-100 reports. By contrast, the other two air carriers in that market submitted a combined 158 passengers on multiple non-scheduled flights during that same time period.

SEP 1 1 2017

3:17-mj-00357-DMS

9

32.     Additionally, from July 2014 through February 2015, Grant Aviation, Inc's average monthly passenger traffic for the Bethel to Toksook Bay market was approximately 54 passengers, excluding the misclassified passengers noted above. However, from March through June 2015, that average rose by 100 passengers to approximately 154 passengers, excluding the misclassified passengers. By comparison, the other two air carriers in that market maintained averages that fluctuated from approximately 148 to 154 passengers and approximately 223 to 202 passengers, respectively, during those same periods.

33.     Moreover, from July 2014 through June 2015, Grant Aviation, Inc. did not submit a single non-scheduled flight destined for Toksook Bay in its T-100 reports. By contrast, the other two air carriers in that market submitted a combined 158 passengers on multiple non-scheduled flights during that same time period.

34.     It is reasonable to infer that Grant Aviation, Inc. has submitted inflated passenger traffic for multiple markets, not just Bethel to Toksook Bay. Therefore, the true extent and impact of Grant Aviation, Inc.'s submissions to the Office of Airline Information cannot be known without reviewing records that are required to be maintained by Grant Aviation, Inc. for seven years per 39 U.S.C. § 5402(k)(3).

**Grant Aviation, Inc. acknowledged that it likely misclassified flights**

35.     In February 2017, Grant Aviation, Inc. President Bruce McGlasson and other company representatives met with employees from the Office of Airline Information. During the meeting, Grant Aviation, Inc. acknowledged that the process by which it recorded flights in the company's reservation system, Takeflite Solutions, had likely caused non-scheduled flights to be classified as scheduled flights. Grant Aviation, Inc. admitted that it was possible that non-scheduled passenger traffic was inappropriately counted as scheduled passenger traffic in its

3:17-mj-00357-DMS

SEP 1 1 2017

T-100 reports. Grant Aviation, Inc. downplayed the significance of any misclassifications and later represented to the Office of Airline Information that the errors only affected one month of T-100 data. Although Grant Aviation, Inc. attributed the misclassifications to user error on the part of its employees using the Takeflite Solutions system, Grant Aviation, Inc. was still required by law to submit accurate T-100 reports regardless of the reservation system the company utilized.

36.     Postal Service payment data shows that Grant Aviation, Inc. received approximately $21 million from the Postal Service for the handling and transportation of mail, including bypass mail, for the 28-month period between January 2015 through April 2017. As stated above, for one month (October 2015), Grant Aviation, Inc. received approximately $19,302.20 from the Postal Service for the carriage of bypass mail in one mail market (Bethel to Toksook Bay). It is reasonable to infer that Grant Aviation, Inc. has inflated its passenger traffic for more than one month and in multiple markets. Therefore, I believe a portion of the $21 million paid to Grant Aviation, Inc. was based on the electronic submission of false T-100 data to the Office of Airline Information.

37.     As stated above, just for the month of October 2015, for the Bethel to Toksook Bay market, Grant Aviation, Inc.'s inflated scheduled passenger traffic data resulted in the company receiving approximately $19,302.20 from the Postal Service to which it was not entitled.

### Grant Aviation, Inc. maintained records at its corporate office in Anchorage

38.     According to Grant Aviation, Inc.'s website at www.flygrant.com, the company's corporate office is located at the **Premises** described in **Attachment A.** Based on my training and experience, companies maintain business records at their corporate offices. In addition,

SEP 1 1 2017

Grant Aviation, Inc. is required by law to maintain records related to T-100 reports for seven years. In addition, in November 2013, the Office of Airline Information conducted a review of Grant Aviation, Inc.'s passenger tickets at the company's corporate office described in **Attachment A,** which included records for the Bethel to Toksook Bay market. As such, I have probable cause to believe that the records described in **Attachment B** will be maintained at the **Premises** described in **Attachment A.**

## TECHNICAL TERMS

39.    Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.    IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      b.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international



3:17-mj-00357-DMS

SEP 1 1 2017

borders, even when the devices communicating with each other are in the same state.

c.  Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

40.     As described above and in **Attachment B,** this application seeks permission to search for records that might be found on the **Premises,** in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

41.     *Probable cause.* I submit that if a computer or storage medium is found on the **Premises,** there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not

SEP 1 1 2017

actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e. Based on actual inspection of other evidence related to this investigation, I am aware that computer equipment was used to generate, store, and print documents used in the scheme. There is reason to believe that there is a computer system currently located on the **Premises.**



3:17-mj-00357-DMS

SEP 1 1 2017

Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 37 of 53

42.   *Forensic evidence.*  As further described in **Attachment B,** this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **Premises** because:

> a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

> b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or

alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically

also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge

about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

43.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage

media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the **Premises.** However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

44. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

3:17-mj-00357-DMS

SEP 1 1 2017

45.      Grant Aviation, Inc. ("the Company") is a functioning company that conducts legitimate business. The seizure of the Company's computers may limit the Company's ability to conduct its legitimate business. As with any search warrant, I expect that this warrant will be executed reasonably.  Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied.  Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption.  If employees of the Company so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of the Company's legitimate business.  If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

## CONCLUSION

46.      Based on the foregoing facts, I respectfully submit there is probable cause to believe that evidence of criminal offenses, namely, violations of 18 U.S.C. § 1001 (Making a False Representation to the United States) and 18 U.S.C. § 1343 (Wire Fraud), is located at Grant Aviation, Inc., and in particular the locations described in **Attachment A,** which is incorporated by reference.

47.      I, therefore, respectfully request that a search warrant be issued authorizing the search of the locations described in **Attachment A,** and the search and seizure of the items listed in **Attachment B,** which is incorporated herein by reference.

SEP 1 1 2017

3:17-mj-00357-DMS

## REQUEST FOR SEALING

48.    Because this investigation is ongoing, disclosure of this search warrant, the

affidavit, or any related papers and attachments thereto will jeopardize the progress of the

ongoing investigation. Exposure of the facts, email accounts, and identities of the subjects,

witnesses and matters contained in the Affidavit for Search Warrant at this time could hamper,

impede or jeopardize this investigation. Such a disclosure would give the targets an opportunity

to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

Accordingly, I request that the Court issue an order that the search warrant, this affidavit in

support of application for search warrant, the application for search warrant, and all related

papers and attachments thereto be filed under seal until further order of this Court.

Respectfully submitted.

**Signature Redacted**

REDACTED
SIGNATURE

Colby Britton
Special Agent
U.S. Department of Transportation,
Office of Inspector General

Subscribed and sworn to before me
On September ____11____, 2017:

/S/ DEBORAH M. SMITH
CHIEF U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED

DEBORAH M. SMITH
UNITED STATES MAGISTRATE JUDGE

REDACTED
SIGNATURE

9/12/2017

Scott A. Oravec
U.S. Magistrate Judge

SEP 1 1 2017

3:17-mj-00357-DMS

21

## **ATTACHMENT A**

*Property to be searched*

The property to be searched is **Grant Aviation, Inc., 4451 Aircraft Drive, Anchorage, Alaska, 99502,** further described as a grey, two-story building located on the west side of Lake Hood and northeast of Ted Stevens Anchorage International Airport. The **Premises** can be reached by traveling Northbound on Aircraft Drive and turning right (East) prior to the intersection of Aircraft Drive and Lake Hood Taxiway. Attached to the building and included in the **Premises** is an aircraft hangar. On the metal, exterior door of the aircraft hangar is a white sign with "Grant Aviation" written in red and the company's logo. Additionally, there is a grey garage door next to the hangar with the same white Grant Aviation sign as is affixed to the hangar door. This garage is also included in the **Premises.** A mesh, metal structure on the façade of the building says "LAKE AIRE COMPLEX 4451 AIRCRAFT DRIVE" and bears the names of Grant Aviation, Servant Air, and State of Alaska Lake Hood Operations. Grant Aviation, Inc's public entrance is on the southeast side of the building and bears a red Grant Aviation logo.



3:17-mj-00357-DMS

## **ATTACHMENT B**

*Property to be seized*

For the period from January 2011 to the present, the following documents, records, photographs, and personal property, in any form or format, constituting evidence of violations of of 18 U.S.C. § 1001 and 18 U.S.C. § 1343:

**A.    Documents, Records, Photographs, Personal Property**

Ownership and control records

1.    Records that reflect any persons or organizations who have direct or indirect ownership or control interests in, or who have acted as a director, officer, agent, or management employee of Grant Aviation, Inc..

2.    Records tending to establish ownership and/or control of the **Premises,** including utility records, telephone records, mail, canceled envelopes, rental or lease records, title records, deeds, mortgage records, property tax records, insurance records, business cards, personal identification documents.

3.    Records tending to establish the identity of persons in control of computers and other digital storage media.

T-100 data and related records

4.    T-100 reports and all supporting records, including records related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

5.    Training materials and policies related to the preparation of T-100 reports or the submission of T-100 reports to the Department of Transportation or the Postal Service.

Flight records and related records

6.     Flight records, including (i) flight schedules and all supporting records, including records related to the preparation of flight schedules or the submission of flight schedules to the Official Airline Guide; and (ii) flight plans, manifests, pilot logs, tickets, records reflecting crews, passengers, or freight onboard, records related to the preparation of such documents.

7.     Training materials and policies related to the preparation of flight records.

Passenger transaction records

8.     Passenger transactions records, including passenger correspondence, internal correspondence about passengers, passenger contact information, reservation information, passenger tickets, fares, cancellations, refunds, invoicing and payment records, and other records indicating payment or request for payment for flights operated by Grant Aviation, Inc.

Aircraft records

9.     Records related to Grant Aviation, Inc. aircraft, including purchase or lease agreements, aircraft lists, aircraft photographs, aircraft tail numbers.

Records and correspondence sent or received

10.     Records and correspondence sent to or received from the Department of Transportation or the Postal Service.

11.     Records and correspondence sent to or received from Grant Aviation of Alaska, LLC, or Eric Young.

12.     Internal and external communications related to the bypass mail program, including the handling or transportation of mail, passengers, or freight.



<u>Financial Records</u>

13.     Tax records, bookkeeping records, and financial statement records, including journals, ledgers, registers, trial balances, income statements, balance sheets, retained earnings statements, cash flow statements.

14.     Financial account records, including bank statements, credit account statements, investment account statements, and insurance account statements; records reflecting dates and amounts of deposits, withdrawals, and interest; passbooks, deposit/withdrawal tickets; records reflecting the identify of checks deposited, check registers, cancelled/processed checks; records of other financial transactions.

15.     Payroll records including W-2's, 1099s, employee rosters, payroll checks, employee contracts, salary information, timesheets, and training records, as well as all telephone lists, address lists, and contact information for Grant Aviation, Inc. employees.

**B.     Electronic Records**

16.     Computers or storage media used as a means to commit the violations described above.  The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, tablets, server computers, and network hardware.  The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

17.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, **"Computer"**):

3:17-mj-00357-DMS                                          3

a. records and information falling within the categories set forth above;

b. records and information relating to any e-mail account with the domain "@flygrant.com";

c. evidence of who used, owned, or controlled the **Computer** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence of the attachment to the **Computer** of other storage devices or similar containers for electronic evidence;

f. evidence of the times the **Computer** was used;

g. passwords, encryption keys, and other access devices that may be necessary to access the **Computer**;

h. documentation and manuals that may be necessary to access the **Computer** or to conduct a forensic examination of the **Computer**;

i. records of or information about Internet Protocol addresses used by the **Computer**;

j. records of or information about the **Computer's** Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or



Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 49 of 53

SEP 1 1 2017

"favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF GRANT AVIATION, Inc. 4451 AIRCRAFT DRIVE, ANCHORAGE, ALASKA   99502** | Case No. 3:17-mj-00357-DMS<br><br>~~[PROPOSED]~~ **ORDER GRANTING MOTION TO SEAL SEARCH WARRANT, APPLICATION, AFFIDAVIT FOR SEARCH WARRANT, AND RETURN**<br><br>**FILED UNDER SEAL** |

For the reasons stated in the United States' Motion and Affidavit in Support of an

Application for a Search Warrant, including the fact that exposure of the facts and identities of

the subjects, witnesses and matters contained in the affidavit at this time could hamper, impede

or jeopardize this investigation, the Court hereby grants the motion to seal.    The Court finds that

the danger of disclosure of facts and identities of the subjects, witnesses and matters contained in

the affidavit outweighs the public's right to access.

IT IS HEREBY ORDERED that all papers submitted in support of this Application,

including the Application, Affidavit, and Search Warrant, in the above-numbered matter be filed

in the Office of the Clerk of Court under seal, together with this Order and Motion for Order.

Said documents shall not become matters of public record until further order of the Court.

The court finds that the need for secrecy outweighs the public's interest in open

proceedings in this matter.

DATED this ⎱⎱ day of September, 2017, at Anchorage, Alaska.

/S/ DEBORAH M. SMITH
CHIEF U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED

DEBORAH M. SMITH
United States Magistrate Judge

BRYAN SCHRODER
Acting United States Attorney

RETTA-RAE RANDALL
Assistant U. S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Rm. C-253
Anchorage, AK   99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: rettarae.randall@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF GRANT AVIATION, INC. 4451 AIRCRAFT DRIVE, ANCHORAGE, ALASKA   99502** | Case No. 3:17-mj-00357-DMS <br><br> **MOTION TO SEAL SEARCH WARRANT, APPLICATION, AFFIDAVIT FOR SEARCH WARRANT, AND RETURN** <br><br> **FILED UNDER SEAL** |

**EX PARTE MOTION TO SEAL**
**APPLICATION AND AFFIDAVIT IN SUPPORT OF SEARCH WARRANT AND ALL**
**RELATED DOCUMENTS**

COMES NOW the United States of America, by and through Bryan Schroder, Acting

United States Attorney for the District of Alaska, and hereby moves for an order sealing the

above-numbered Application, Affidavit, and Search Warrant, and this motion and order.

This sealing order is requested by the government because the investigation revealed in

the Affidavit in Support of Search Warrant is still in progress.   Undersigned counsel has been

advised that this search warrant is just one piece of an ongoing investigation. On information and

belief, exposure of the facts, email accounts, and identities of the subjects, witnesses and matters

contained in the Affidavit for Search Warrant at this time could hamper, impede or jeopardize

this investigation. Such a disclosure would give the targets an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

This Court has the discretion and authority to seal Affidavits in support of search warrants. *See Matter of Sealed Affidavits for Search Warrants*, 600 F.2d 1256 (9th Cir. 1979); *Officers of Lakeside Non-Ferron Metals v. United States*, 679 F.2d 778 (9th Cir. 1982).

Based on the foregoing, the government respectfully requests this Court enter the attached order sealing all papers submitted in support of this Application, including the Application, Affidavit, and Search Warrant, and this motion and order.

RESPECTFULLY SUBMITTED this ___11th___ day of September, 2017, in Anchorage, Alaska.

BRYAN SCHRODER
Acting United States Attorney

RETTA-RAE RANDALL
Assistant U.S. Attorney

Case 3:17-mj-00384-DMS   Document 1-3   Filed 09/12/17   Page 53 of 53